U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2025 SEP -4 PM 3: 55

CLERK
BY
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

VILMA NOEMI APARICIO-DERAS,  )
                              )
        Petitioner,           )
                              )
    v.                        )    Case No. 2:25-cv-726
                              )
JONATHAN TUREK, in his official )
capacity as Acting Superintendent of )
Chittenden Regional Correctional Facility, )
PATRICIA H. HYDE, in her official )
capacity as Acting Field Office Director of )
the Boston Immigration and Customs )
Enforcement Office, TODD M. LYONS, in )
his official capacity as Acting Director of )
United States Immigration and Customs )
Enforcement, and KRISTI NOEM, in her )
official capacity as Secretary of the United )
States Department of Homeland Security, )
                              )
        Respondents.          )

## ORDER EXTENDING TEMPORARY RESTRAINING ORDER

Petitioner Vilma Noemi Aparicio-Deras, a resident of Connecticut and the mother of an eight-year-old daughter, was detained by agents of U.S. Immigration and Customs Enforcement on August 23, 2025, because she is subject to a final order of removal entered on March 5, 2025. (*See* Doc. 1.) She is currently held in South Burlington, Vermont at the Chittenden Regional Correctional Facility. (*Id.*)

On August 31, 2025, Petitioner filed a habeas petition. (Doc. 1.) She challenges the circumstances of her arrest, alleging racial profiling in violation of the U.S. Constitution and the failure of the Government to provide appropriate and necessary medical care. Six days before her arrest, Petitioner underwent emergency surgery for a kidney stone lodged in her urinary tract. She alleges that she has been denied medication and necessary follow-up for her condition.

The court issued a temporary restraining order on September 1, 2025. (Doc. 2.) The order is limited in scope. It enjoins the Government from moving Petitioner out of the District of Vermont until a hearing can be held. It schedules a further hearing for September 4, 2025. The parties appeared as scheduled for the hearing.

**Factual Background**

Based on the parties' filings, including two reports from physicians in Connecticut who are familiar with Petitioner's care, the court makes the following findings:

On August 17, 2025, Petitioner underwent emergency surgery to relieve pressure on her kidneys due to the blockage of her urinary tract by a kidney stone. The surgical team placed a temporary stent to allow urine to pass more freely from petitioner's body. The kidney stone remains in place and requires a second removal procedure. As a foreign body, the stent provides a potential source of life-threatening infection. It requires antibiotic medication to prevent it from becoming the nidus or source of infection. Because it is only a temporary measure, it also requires a follow-up visit at which it can be removed in an office-based procedure. The kidney stone itself remains in place and requires a second procedure for its removal in a hospital. Petitioner's physicians anticipate that these procedures will be needed in 3-4 months. (Docs. 5-1, 6-1, 6-2.)

During her detention, Petitioner has received scant medical attention. She has not received antibiotics or pain medication as prescribed by her doctor in Connecticut. (Doc. 5-1.) She has not attended a follow up doctor's appointment. Medical staff at the Chittenden Regional Correctional Facility recently contacted the University of Vermont urology practice but no appointment is scheduled. In the meantime, petitioner reports increased pain and other symptoms. (Doc. 5-1.) The parties disagree about whether Petitioner is currently suffering from

an infection. Although the Government promises to do better, Petitioner is held in a state facility where ICE has little control over the conditions of her confinement. There is little evidence that Petitioner's care at the Chittenden Regional Correctional Facility will change in the future so as to provide an appropriate standard of care.

The court concludes that Petitioner has been denied access to medical treatment and is at risk of serious injury or death from systemic infection if she does not receive appropriate post-surgical care, including two procedures. There is no basis for anticipating change in the care she is currently receiving. It is entirely inadequate for someone who recently underwent a significant surgical procedure.

## Legal Standard

Petitioner seeks a temporary restraining order. In order to meet her burden of proof, she must establish:

1. A basis for the exercise of this court's jurisdiction;
2. Irreparable harm absent injunctive relief;
3. A likelihood of success on the merits;
4. Public interest weighing in favor of granting the injunction.

*Daileader v. Certain Underwriters at Lloyds London Syndicate 1861*, 96 F.4th 351, 356 (2d Cir. 2024). Although each factor is important, "[t]he showing of irreparable harm is perhaps the single most important prerequisite for the issuance of a preliminary injunction, and the moving party must show that injury is likely before the other requirements for an injunction will be considered." *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002) (cleaned up). When the Government is a party in a lawsuit, "'the Government's interest *is* the public interest,' [so] the balance of the hardships and public interest merge as one factor." *Saget v. Trump*, 375 F. Supp.

3

3d 280, 339–40 (E.D.N.Y. 2019) (quoting *New York v. U.S. Dep't of Com.*, 351 F. Supp. 3d 502, 673 (S.D.N.Y. 2019)).

## Analysis

**I.     Court's Jurisdiction**

The Government argues that 8 U.S.C. § 1252(a)(5) and 1252(g) strip the court of jurisdiction to hear this case. Both of those provisions concern review of removal orders. The only issue before the court at this time is whether the Government is providing Petitioner with appropriate medical care. The Supreme Court has recognized that the Due Process Clause of the Fifth Amendment extends the right to medical care to civil detainees in the same manner that the Eighth Amendment protects prisoners. *Youngberg v. Romeo*, 457 U.S. 307 (1982). The habeas remedy provides the only means to enforce these constitutional guarantees. *See* ); *Ferreyra v. Decker*, 456 F. Supp. 538, 549–50 (S.D.N.Y. 2020) ("An application for habeas corpus under 28 U.S.C. § 2241 is the appropriate vehicle for an inmate in federal custody to challenge conditions or actions that pose a threat to his medical wellbeing.") The Second Circuit and district courts within our circuit have recognized the application of these principles to immigration detention. *Charles v. Orange County*, 925 F.3d 73 (2d Cir. 2019); *Ferreyra*, 456 F. Supp. 538; *Arias v. Decker*, 459 F. Supp. 3d 561 (S.D.N.Y. 2020). The exercise of habeas jurisdiction over a case raising serious issues concerning the conditions of confinement does not tread on the "jurisdiction stripping" provisions that appear at 8 U.S.C. § 1252(a)(5) and 1252(g) since Petitioner's claim that the jailer is exercising deliberate indifference to petitioner's medical needs in no way challenges the validity of the removal order.

## II. Irreparable Harm

The requirement of irreparable harm is generally satisfied when the petitioner raises a constitutional issue. *Conn. Dep't of Env't. Prot. v. O.S.H.A.*, 356 F.3d 226, 231 (2d Cir. 2004) ("[W]e have held that the alleged violation of a constitutional right triggers a finding of irreparable injury."). But any doubt on this issue disappears on the facts of this case, in which the antibiotic medication Petitioner requires has been prescribed to protect against potentially fatal infection after surgery. Petitioner has met her burden of demonstrating irreparable harm.

## III. Likelihood of Success on the Merits

"Immigration detainees can establish a substantive due process violation for unmet medical needs by showing that a government official 'knew, or should have known' of a condition that 'posed an excessive risk to health,' and failed to take appropriate action." *Ferreyra v. Decker*, 456 F. Supp. 3d at 550 (quoting *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017)). "Deliberate indifference . . . can be established by either a subjective or objective standard: A plaintiff can prove deliberate indifference by showing the defendant official recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, *or should have known*, that the condition posed an excessive risk to the plaintiff's health or safety." *Orange County*, 925 F.3d at 87 (cleaned up).

The facts available to the court at this early stage of the litigation support a finding of likelihood of success on a claim of deliberate indifference. Petitioner has provided a credible account of missing medication and a lack of follow-up despite reporting these concerns to staff at Chittenden Regional Correctional Facility. (Doc. 5-1.) These problems are compounded by a significant language barrier. She speaks only Spanish; staff at the jail are primarily English

speakers. She has no prior exposure to the criminal justice system and has had difficulty adjusting to life in prison. There is no reason to believe that Petitioner has exaggerated the deficiencies in her medical care. She is a person at risk of serious complications who is not receiving adequate care. The scope of that care—and the risks to Petitioner if she does not receive it—are laid out in the two letters from her physicians. (Docs. 6-1, 6-2.)

It is not certain that Petitioner will prevail. As the Government pointed out at the hearing, even before the habeas case was filed medical staff made efforts to better understand Petitioner's medical needs. But certainty is not the standard. The facts in this case concerning the missing antibiotics after surgery demonstrate a serious lapse sufficient to support a reasonable likelihood that Petitioner would prevail in establishing deliberate indifference.

## IV. Public Interest in Granting the Injunctive Relief

The court looks at this issue from two sides. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (in analyzing the last two injunction factors, courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief," as well as "the public consequences in employing the extraordinary remedy of injunction"). The Government advises that Petitioner's removal is currently stayed while the immigration court considers whether to reopen her immigration proceedings and rescind the removal order due to a change of address and lack of notice of the hearing that Petitioner missed. (Doc. 5.) Until that issue is resolved, there is no urgency to proceeding to removal. The public interest *against* granting relief is relatively weak.

The public interest in favor of granting relief is strong. Petitioner has a very specific need for medical care that can be met in the community. It is not being met in her current detention. If she becomes ill or dies, the loss to her family will be immense. We all share a

6

common bond and interest in desiring health for our neighbors—regardless of their immigration status. Ensuring that Petitioner receives basic and necessary post-operative care is very much in the public interest.

## V.     Bail Factors

The traditional factors the court considers in granting bail are risk of flight and danger to the community. In this case, the risk of flight is low. Petitioner is the mother of an 8-year-old. She has established care for a serious medical condition with her doctors in Connecticut. She has a pending removal case in which she intends to seek asylum on the basis of spousal abuse in her country of origin. All of these factors indicate that she will appear as required—both here and in Connecticut.

Petitioner poses no danger to the community. She has no criminal record. There is no indication that she is a violent or dishonest person in any respect. She is the parent of a young child with every reason to stay out of trouble.

## Conclusion

The court RELEASES Petitioner at this time for a period of 120 days, subject to review as necessary. This temporary release is based on her need for medical care from her own physicians in her own community. As a condition of this release, the court requires that she reside in Connecticut and not leave that state except for legal purposes to travel to Vermont or as otherwise ordered by the court. This order takes the form of a temporary restraining order, extended beyond the initial authority of 14 days. Unless the parties request otherwise, the court will conduct a second hearing in 60 days. That hearing will cover the same ground and will afford both sides the opportunity of calling witnesses and providing updated medical

information. It will be conducted for the purpose of granting or denying a preliminary injunction.

The court will establish a briefing schedule for the seizure issue raised by Petitioner as well as the jurisdictional issues raised by the Government. The court and the parties can brief and argue these issues while Petitioner recovers at home from her medical procedure.

Dated at Burlington, in the District of Vermont, this 4th day of September, 2025.

_____
Geoffrey W. Crawford, Judge
United States District Court